## Case No. 10,602.

### The OSCEOLA.

[Olc. 450.] [1]

District Court, S. D. New York. July, 1846.

SEAMEN'S WAGES — FAILURE TO PRODUCE ARTICLES — EVIDENCE OF CONTENTS — EXCUSE — CONTRADICTION BY PAROL — DESERTION — COMPETENCY OF WITNESSES.

1. In a suit upon shipping articles by a seaman to recover wages for a voyage, if the articles are not produced by the master or owner at the trial, after due requirement by the seaman, his statement of the contents thereof, when disputed, will be prima facie evidence of the same.

2. But a call for the articles at the time of trial is not a sufficient requirement, unless it be made to appear they are then in presence of the court, or directly within the control of the master or owner.

3. Quere, if the statement of the mariner is proof of any more than the master is bound by section 1 of Act July 20, 1790 [1 Stat. 131], to insert in the articles to wit, "a declaration of the voyage, or voyages, term or terms of time, for which the seaman or mariner shall be shipped"?

4. If a seaman ships under articles at Boston, in December, 1842, and at New-Orleans in March, 1843, and leaves the ship at Bordeaux, in June, 1843, and in his libel filed against the vessel in this court for wages on those voyages, he prays "the shipping articles may be produced by the master or owner," that is not such notice or requirement as will render his statement proof of their contents.

5. When a witness is examined de bene esse out of court in an admiralty cause, by the claimants, and is cross-examined by the libellants, who reads the cross-examination in support of his action, he cannot then except to the competency of the witness, because interested in the cause, and excludes his testimony given in chief for the claimants.

6. The claimants, on proving a reasonable excuse for not producing the shipping articles on trial, may contradict by parol evidence the statement of their contents by the mariner.

7. The statement of the seaman is incompetent evidence to prove services rendered by him on board the vessel under the shipping articles.

8. Quere, whether Act July 20, 1840, § 1, art. 2 [1 Stat. 394], does not modify section 6 of Act July 20, 1790, in respect to the duty of the master or owner to produce shipping articles, by causing them now to be deposited in the custom-house at the port where the shipment takes place?

9. A seaman, who alleges in his libel for wages that he executed shipping articles for the voyage, cannot claim the right to leave the vessel at his option, and that the agreement is void under the act of 1840, because the shipping articles are not produced on the trial.

10. The sale by a part owner (who is also master) of his interest in a vessel before suit brought, and a release to him by his co-owners of all liability to them, because of any recovery of wages against them or their vessel, render him a competent witness in such action against the vessel.

[11. Cited in The John Martin, Case No. 7,-357, and in Welcome v. The Yosemite, 18 Fed. 384, to the point that the statutory evidence is necessary to convict a seaman of a desertion, which carries a forfeiture of wages, when not

shown to be willful and with intention not to return to the vessel. The desertion punished as an offense by the maritime law is defined in the same terms and established by the same process as it was prior to the act of July 20, 1790.]

On the 19th of March, 1846, William Frances, a colored seaman, filed a libel against the brig, in which he charges, that in the month of December, 1843, he shipped on board her at Boston, for a voyage thence to New-Orleans, thence to Bordeaux in France, and thence back to the United States, Morgan being her master. That he shipped as cook and steward, at $16 per month. That he signed shipping articles, containing his contract for the voyage, and prays that the articles be produced in court. That on the 20th of December, 1843, the libellant entered on board the vessel and into her service, and that the vessel sailed with a cargo from Boston to Demarara, and thence to New-Orleans, where she arrived safely and delivered the cargo, and that the libellant continued on board in service of the vessel until April 10, 1844, when he was taken out of her and confined in prison at New-Orleans for one month, when he was returned again on board; and then, at the request of the master, signed articles "for the balance of the voyage, at $18 per month." That the vessel, on the first of May thereafter, sailed from New-Orleans for Bordeaux, and arrived at that port with the libellant on board, July 20, 1844, where the master illegally discharged him from the vessel without paying the wages due him. He further alleges that the master detained his clothes in the ship, worth $80, and refused to deliver them up to him, and he was out of employment at Bordeaux, until September 1, 1844, and was in the service of the vessel eight months and ten days. The libel charges obscurely that the master agreed when he shipped the libellant not to take him to New-Orleans. He claims for wages due, $126 06, and $80, the value of his clothes. The libel prays an answer, but does not demand it under oath.

The answer was filed May 23, 1846, in the name of the owners of the brig, by their agent or attorney in fact. It alleges that Bennett Morgan was master of the brig, and on the 18th of December, 1842 (and not 1843), the libellant shipped on her as cook at $14 per month, from Boston to Demarara, and one or more ports in the West Indies, and back to a port of discharge in the United States, and admits he signed shipping articles for the voyage, which they are ready to produce as they may be required. They aver that he received one month's wages in advance; that the vessel sailed from Boston December 31, 1842, to Demarara and delivered her cargo; thence to St. Thomas, in ballast, and thence to New-Orleans, in ballast, where she arrived March 10, 1843, and where the voyage ended. That the libellant was put in prison there, without the authority or consent of the master, and was paid.

[1] [Reported by Edward R. Olcott, Esq.]

his wages in full about the 14th of March, and gave a receipt in writing therefor; and about the same day he shipped as cook, and signed articles at the wages of $18 per month, for a new voyage to Bilboa, thence to one or more ports in Europe, and back to a port of discharge in the United States. That the vessel arrived at Bilboa and delivered her cargo, where $14 80 was paid the libellant, and she proceeded with him to Bordeaux, where she arrived June 5, 1843. On the 27th of the same month, as the brig was getting under way on her return voyage, the libellant deserted from her and took all his clothes ashore, and did not leave her with the assent or knowledge of the master or other officers of the brig, nor did he leave any clothes or property of his own with the brig. The answer denies that the master agreed to discharge the libellant if the vessel was about to proceed to New-Orleans, or that any balance of wages was due him. The libellant called upon the claimants to produce the shipping articles at the trial, and rested his case without offering any evidence of a previous service of notice on the master or vessel to produce the articles on the trial. He afterwards read the cross-examination of the master of the brig, whose testimony had been taken on the part of the claimants; and when the libellant offered to put in evidence the direct-examination of the witness in the deposition, the libellant objected to the testimony, as inadmissible, alleging that the master was part owner of the vessel.

The whole deposition was admitted by the court. It was taken before a commissioner under the provisions of the act of congress, on the 6th of April, 1846. The witness testified that he was part owner of the vessel when the libellant shipped on board, but had sold and conveyed his interest to the claimants before this suit was commenced. He also produced a release to him from the claimants of all liabilities to them on account of any recovery which should be had in this action by the libellant. The evidence of the master supported the averments of the answer. He also stated, on his examination, that he had neither set of shipping articles in his possession. He supposed the original one was in the custom-house at Boston, but did not know where the certified copies were. He testified that when the vessel arrived in New-Orleans, March 9, 1843, and he found he must give bonds in $500 not to leave the libellant there, and that the libellant must also be put in prison until the departure of the vessel, he gave him the choice of being then discharged and shipping in another vessel, for a Northern port, or to remain in prison until the brig was ready to sail. The libellant elected to be discharged, and that the witness then paid his wages in full, and took his receipt therefor. All the jail fees were also paid by the consignee of the vessel. That two or three days after, the libellant shipped on the voyage as stated in the answer, to Bilboa, &c., at $18 per month. That one month's wages were paid him in advance, and all the residue were paid at Bordeaux; and that at the last place the libellant ran away from, and deserted the vessel, as she was leaving the port for New-Orleans; and that the vessel was detained twenty-four hours in Bordeaux in consequence, and that nothing was due him from the vessel. He had never promised the libellant not to return with him to New-Orleans.

A. Nash, for libellant.

E. Burr and E. C. Benedict, for claimants.

BETTS, District Judge. The libellant, in the first instance, introduced no testimony on the hearing, but relied upon his own statement of his case in the libel, accompanied with a verbal call upon the claimants in court to produce the shipping articles. The deposition of the master of the vessel had been taken de bene esse, on the part of the claimants, pursuant to the thirtieth section of the judiciary act of September 24, 1789 [1 Stat. 73], and he had been cross-examined on the part of the libellant. The advocates of the libellant claimed the right to read that cross-examination from the deposition on file in court, and excepted to the admissibility of the direct examination of the witness, because he was part owner of the brig, and interested in the case; and also, because the shipping contract being in writing, parol evidence of its contents could not be given by the claimants. To obviate any objection to the witness because of his interest in the case, a formal release, executed and delivered to him by the claimants in court, was given in evidence, which discharged him from all liabilities to them because of any recovery that may be had against them in favor of the libellant for wages earned on the voyages in question, or for any property belonging to him left on board the brig; and they also relied upon his testimony in the deposition that he had sold and conveyed, before this action was brought, all his interest in the brig, to the claimants. The exceptions are insufficient to exclude the evidence on either ground.

The libellant cannot select a portion of the testimony of the master and make it evidence for himself, and then exclude the residue which is favorable to the claimants, because of the legal incompetency of the master to be a witness in the cause. A party who calls a witness to testify to the merits of a cause renders him a competent witness for the opposite party; and his entire testimony is thus necessarily made admissible against the libellant, and his general credit is also conceded.

But if the exception of the libellant prevails, and the evidence of the master is excluded, it may well be doubted whether he has furnished sufficient proof in the cause to support his action. None other would remain than his statement in the libel of the contents of the shipping articles. The evidence

implied from such statement could be carried no further than to prove the shipping contract contained those stipulations which are prescribed as part of it by act of congress. The provision of the statute is, "It shall be incumbent on the master to produce the contract, if required, to ascertain any matters in dispute, otherwise the complainants shall be permitted to state the contents thereof, and the proof of the contrary shall lie on the master." Act July 20, 1790, § 6. By the first section of that act the master of any vessel of fifty tons or upwards, bound from a port in the United States to any foreign port, is required, before he proceed on such voyage, to make an agreement in writing or in print, with every seaman on board, "declaring the voyage or voyages, term or terms of time for which such seaman shall be shipped."

The matters in dispute contemplated by the statute manifestly are those resting upon the stipulations in the shipping articles, and upon all sound principles of interpretation would be restricted to those which congress designated as vital to the contract. The penalty or disadvantage incurred by neglecting to fulfil the directions of the law is, that the master or owner will be bound by the statements of the mariner in respect to those provisions, and be further liable to the highest rate of wages paid within the last three months at that port. Whatever the seaman chooses to assert, the agreement "declared the voyage and term or terms of time of shipment to be," if disputed, must be deemed to be as he states it. Between the two versions of the agreement alleged in these pleadings, that stated in the libel must, to that extent, be adopted and executed as the true one; but I find no intimation in any authority that a seaman acquires the right under that provision to set up a contract for himself relating to any matter not specified in the act as a particular which must appear in the written or printed agreement. How far, then, the omission in the act of wages, as one of the constituents of the contract to be declared in the shipping articles, will permit the statement of the libellant to be made evidence of that particular, may be regarded questionable. If, however, under that privilege a seaman has the power to embrace every species of obligation the master is capable of entering into, he could not have one which would supply the further ingredient essential to the maintenance of his action—that is, that he had performed the voyage agreed upon. This fact can come into existence only after the execution of the shipping articles, and is incapable of being proved by their contents any more than that of short allowance, injurious treatment or abandonment of the libellant during the voyage. With whatever fulness the execution of the articles themselves might then be proved in court, no decree could be obtained on that foundation alone. There must be the additional evidence that the

stipulated services were performed. The averment or statement of that fact by the seaman could avail no more in establishing it than its denial by the owner or master in an answer would in disproving it. The bargain of hiring, however explicit, affords no ground of action without the agreed services have been performed or legally excused; and accordingly, if the statement of the libellant proves in this case the agreement he sets up in his favor, he does not thereby also prove he has rendered services on the vessel, or offered to do so on his part.

In my opinion, then, the libellant cannot derive from the effect given by statute to his declarations or statement, sufficient evidence to make out a right to wages. If he might, in this instance, find in the answer admissions which, in conjunction with his statements, establish a prima facie right of action, his counsel does not avail himself of that evidence, but asserts a right to a decree in his favor solely upon the ground of his own allegations and the failure of the claimants to produce the shipping articles. In my judgment this evidence is inadequate. There may be causes for question, whether the statute is intended to render the statement of a seaman proof of his contract on trial in court, or the privilege be not limited to disputes upon points arising before a judge or magistrate on a preliminary application for a summons to the master or owner to show cause why process in rem should not issue against a vessel for wages. Giving the statute the construction most favorable to seamen, there must, no doubt, appear probable evidence that the shipping articles are in possession of the master or owner, or in a situation to be at their command, to be produced by them in court on trial, before the mariner can substitute his statement for the contract, which by the rules of the common law he would be compelled to produce and prove on his part.

The point is open for consideration, whether Act July 20, 1840, § 1, art. 2, which by necessary implication compels the owner to deposit the original articles with the collector of the port where the contract is made, does not modify the sixth section of Act July 20, 1790, in respect to the production of shipping articles in court, if not so far as to relieve the master or owner from producing them at the call of the seaman, because now in the custom-house and as much at the command of the mariner as of the owner or master, yet at least to compel the seaman to give distinct notice, a reasonable period of time previously, that he requires their production at a specified time and place, to be used on the trial. These shipping articles were executed, one at Boston, in December, 1842, and the other at New-Orleans, in March, 1843. This action was commenced in this court, without summons, in March, 1846, and the claim and answer was filed by the claimants the May there-

after. No definite notice was given the claimants to produce either set of articles on the trial, previous to the time the cause was put on actual hearing. The issue was made on the pleadings the 30th of May, and the cause was heard the 16th of June. The brig being a foreign vessel, and the libellant, in both instances, having executed the articles in question out of the state of New-York three years previous to bringing his suit, I think it exceedingly questionable whether he can act upon his statement of their contents in the libel, without proof that the articles were at the time in court, or at least that he had given notice to the claimants in reasonable time that he should require their production there on the trial. This may become a very important question in the construction of the two acts together, and as the necessities of the case do not demand an explicit decision upon it, I shall leave the point open for consideration until the case shall arise which renders its determination indispensable, remarking only that the libellant has no right of standing in court other than on this technical point, that his own statement constitutes, prima facie, a full right of action and recovery in his favor. The claimants prove satisfactorily that the libellant had been paid wages due him to the time he left the vessel at Bordeaux, with the exception of three or four dollars. That he wilfully deserted her at that port, and caused thereby an expense to the vessel in waiting for and obtaining a substitute cook to fill his place, exceeding the balance unpaid him.

The counsel of the libellant takes two positions, which he insists obviates the charge of his desertion: first, that he could lawfully abandon the vessel at any time on the voyage, because the claimants do not give legal proof that he had bound himself to the brig by shipping articles executed as required by law; and in the second place, because the log-book is not produced and proof furnished by that, according to the provisions of the 5th section of the act of July 20, 1790, that the libellant was absent from the ship without leave of the officers in command of her. There is clearly no foundation for the first point. The 10th article of section 1 of the act of July 20, 1840, renders all shipments of seamen made contrary to the acts of congress void, but that, or any other statute, does not annul the obligation of seamen to the vessel, and permit them to leave the service at their option, when the shipping articles are merely not forthcoming by the master to verify his authority over the crew. The obligation of the mariner is complete on the due execution of shiping articles, and is not revoked by its subsequent loss or destruction. If once duly executed it retains its binding effect upon all parties, if a reasonable excuse for not producing them in evidence be furnished.

The libellant avers in his libel that he signed shipping articles, and claims wages under that contract from Boston to New-Orleans and from New-Orleans to Bordeaux, and thence back to a port of discharge in the United States. He thus precludes himself from asserting that his shipment was void. In the second place, it being proved that the libellant wilfully and clandestinely absconded from the brig with the intention not to return to her again, he forfeits his wages under the general marine laws. 3 Kent, Comm. 198. And the offence may be established according to those laws without resort to the methods of proof designated by the 5th section of the act of July 20, 1790. Cloutman v. Tunison [Case No. 2,907], 1 Hagg. 163; Pratt v. Thomas [Case No. 11,377]. The statutory evidence is necessary to convict a seaman of a desertion, which carries a forfeiture of wages, when not shown to be wilful and with intention not to return to the vessel. The desertion punished as an offence by the maritime law is defined in the same terms and established by the same process as it was prior to the act of July 20, 1790. So, also, without invoking the law specially applicable to seamen, the libellant, under the common law contract of hiring, could not maintain an action for compensation for serving a portion of the time bargained for. When the engagement is for an entire period or undertaking, it must be fully performed, or all claim to compensation under it is lost. In either alternative, whether the libellant claims a right to recover on the effect given to his statements by the statute, or succeeds in excluding the testimony of the master, he will stand before the court without evidence entitling him to a decree. But I think, independent of the act of the libellant in reading part of the deposition of the master in support of his demand, and thus bringing the whole deposition into the case as evidence, that the proofs satisfactorily show the master was no way disqualified as a witness, having no interest in the vessel or in the event of the cause. The libel must accordingly be dismissed with costs.